GREENLEAF C. SIBLEY, and another,

*vs.*

PENOBSCOT LUMBERING ASSOCIATION.

Penobscot. Opinion December 26, 1899.

*Corporation. Actions. Log Owners. Priv. and Spec. Laws, 1854, c. 236, § 3; c. 298, § 6; c. 299, § 10; 1869, c. 34.*

A corporation aggregate is a collection of individuals united in one body under such a grant of privileges as secures the succession of members without changing the identity of the body, and constitutes the members for the time being one artificial person, or legal being, capable of transacting some kind of business like a natural person.

*Held;* that the Penobscot Lumbering Association is a corporation, and liable to its members in actions at law for damages sustained by them through its negligence in booming and rafting their logs.

No duty is imposed upon such injured parties, either by the defendant's charter or by the common law, of presenting their claims to the defendant within any particular time; nor are they obliged to present their claims before bringing suit.

See *In re Penob. Lumb. Assoc.*, ante. p. 391.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

This was an action on the case, in which the jury rendered a verdict of $309.08 for the plaintiffs, who claimed that the defendant corporation had been guilty of carelessly and negligently rafting out and delivering to them their logs in the spring and summer of 1893.

At the close of the charge, the defendant association, by its counsel, requested the court to rule and instruct the jury that the action could not be maintained for the following reasons:

Because the plaintiffs failed seasonably to present their claim for damages to the defendant association that it might be included in the assessment, or a supplementary assessment of that year 1893, covering the expenses of that year.

Because it was the duty of the plaintiffs to present their claim for damages to the defendant association within a reasonable time,

and there is no evidence in the case that they ever presented their claim to the association, except by bringing this action, November 6, 1897.

Because the plaintiffs were members of the defendant association during the rafting season in question.

The presiding justice refused to give the requested instructions and after verdict for the plaintiff, the defendant took exceptions.

The case is stated in the opinion.

*P. H. Gillin and C. J. Hutchings*, for plaintiffs.

*C. P. Stetson and M. Laughlin*, for defendant.

Counsel cited: *Plummer* v. *Penob. Lumbering Assoc.*, 67 Maine, 363; *Ocean Castle* v. *Smith*, 58 N. J. L. 545; *Russell* v. *Men of Devon*, 2 T. R. 667; *Hill* v. *Boston*, 122 Mass. 344; *Lavalle* v. *St. Jean Baptiste Society*, 17 R. I. 680; *Glavin* v. *R. I. Hospital*, 12 R. I. 411, (34 Am. Rep. 675); 18 Am. & Eng. Corp. Cases, p. 428; Dillon, Mun. Corp. § 948, et seq., (4th Ed.); 7 A. & E. Ency. L. 839, 2nd Ed.; *McDonald* v. *Mass. Gen. Hospital*, 120 Mass. 432; *Perry* v. *House of Refuge*, 63 Md. 20, (52 Am. Rep. 495); *Elmore* v. *Drainage Com'r*, 34 A. & E. Cor. Cases, 491; *Mersey Docks* v. *Gibbs*, 11 H. L. Cases, 688; *Newcomb* v. *Boston Protective Department*, 151 Mass. 215; *Fire Ins. Patrol* v. *Boyd*, 120 Pa. St. 624; *Grindle* v. *York Mutual Aid Association*, 87 Maine, 177; *Weymouth* v. *Penob. Log-Driving Co.*, 71 Maine, 29.

SITTING: PETERS, C. J., EMERY, WISWELL, SAVAGE, FOGLER, JJ.

SAVAGE, J. After a verdict for the plaintiffs, this case comes up on a motion for a new trial, and exceptions by the defendant. The plaintiffs claim that by reason of the negligence of the defendant, in booming and rafting their logs in Penobscot river, during the season of 1893, they suffered damage. We do not think the defendant can take anything by its motion, on the grounds that the verdict is against the evidence, and that the damages are excessive. There is sufficient evidence to sustain the verdict, and the damages are not clearly excessive.

But the defendant urges that the plaintiffs are not entitled to retain their verdict as a matter of law, and this point requires careful consideration.

The contention of the defendant is, in the first place, that it is not a corporation in such sense as to be a separate, legal entity, distinct from the members who compose it; that it is in effect a "corporate partnership," and that the plaintiff, being a member, being one of the partnership, cannot maintain an action at law against the partnership.

We do not think this position can be sustained. The defendant's charter, Private and Special Laws of 1854, chap. 298, is entitled an act to *incorporate* the Penobscot Lumber Association. By section 1, the association is vested with the usual "powers of corporations." It is declared that the "corporate power" is vested in a board of trustees. This last provision was amended in 1869, (Private and Special Laws of 1869, chap. 34, § 2,) so that the "corporate powers" are now vested in the members of the association. The members named in the charter are called "corporators." Section 2. The charter provides that the association shall "remain a corporate body" after the time named in the first section of the act, for the purpose of settling up its business. Section 36. These expressions from the charter leave no doubt of the intention of the legislature to create a corporation. The character of the body created, as drawn from the general provisions of the charter, is clearly corporate. It does not possess every attribute of a corporation, but it possesses sufficient. It answers well an approved definition of a corporation. "A corporation aggregate is a collection of individuals united in one body under such a grant of privileges as secures the succession of members without changing the identity of the body, and constitutes the members for the time being one artificial person, or legal being, capable of transacting some kind of business like a natural person." *People* v. *Assessors of Watertown*, 1 Hill, 620.

The members of this association are the log owners on Penobscot river and its tributaries. They carry on the business of booming and rafting logs in the Penobscot boom. The members may

change from year to year, but the association remains, and the business goes on. The association is a legal entity, entirely distinct from its members. It is a corporation.

But the defendant contends further that if it is a corporation, it was not the intention of the legislature that it should be made liable to its members in actions at law, for damages such as are claimed in this case. And in support of this position, the learned counsel for the defendant liken this corporation to quasi-corporations, like municipalities organized for public purposes, and whose constituent membership are such nolens volens. They also say that by statute this association has succeeded to all the duties and liabilities of the Penobscot Boom Corporation, and that by a fair construction of its charter, remedies of members are limited to such remedies as existed against the Penobscot Boom Corporation; and hence that persons suffering damage are limited, in the first instance at least, to the special remedy provided in the charter of the latter corporation. Private and Special Laws of 1854, chap. 236, § 3; 1854, chaps. 298, § 6, and 299, § 10. It is argued further that it was not intended that actions of tort should lie against this particular corporation, not only because of the general character and scope of the corporation, but also, among other things, because the charter does not give the right to sue and impose the liabilty of being sued, and because there is no corporate fund provided out of which judgments for damages can be satisfied. We shall not review the authorities cited by counsel, nor discuss the positions taken by them, further than to point out that they are not applicable to the facts in this case.

This association is not a quasi-corporation. It is not like a municipal corporation. Only in a limited sense is it a public corporation. It is rather a corporation organized solely for the convenience and profit of its members, not a profit earned and distributed as a dividend, but a profit saved in the increased convenience and the lessened expense of booming and rafting their logs, by a single instrumentality, under one management. A municipality even is liable for acts of negligence in the transaction of such business as it may lawfully do for profit, as distinguished from the

exercise of its governmental or public functions. *Moulton* v. *Scar-borough*, 71 Maine, 267. But, beyond any considerations arising from the statutory character of the defendant corporation, we think it clearly appears from the charter itself that this corporation has the power to sue, and is subject to being sued, like other business corporations, and that it is specifically made liable to suit for damages to log owners occurring through the negligence of the corporation. In the first place, the corporation is vested with the usual powers of corporations. That includes the power of suing, and we think, incidentally, the liability of being sued. Then, if that is not enough, sections 10 and 11 provide for suits by members against the corporation, and section 11 impliedly, but clearly, recognizes the right of a log owner to maintain an action at law to recover damages caused by negligence. That section provides a remedy by summary process for any owner of lumber who may suffer loss or damage through the negligence of the association, but the summary process is given "in addition to his common law rights." This last phrase has no significance except upon the assumption that such injured party has a remedy also at common law.

As to the suggestion that no fund is provided for the payment of damages such as these, we think it is well answered by the provisions of section 18, by which the corporation is given the power, to which is added the duty, of raising a fund by assessment, "in order to meet all payments and expenses of every character." If it has no fund, it has the power to create one, and it is its duty to do so, if the necessity for it arises. But it has a fund. It is compelled to accumulate a safety fund. Private and Special Laws of 1869, chap. 34, § 7. And we hold elsewhere, (*In re Petition of Penobscot Lumbering Association*, ante, p. 391) that this safety fund is for the security and payment of all debts, including claims like the one in this case.

We need to examine only one other ground of defense under the motion. The charter of the defendant provides for the appointment of Boom Commissioners. Section 25. "Whenever five or more persons interested in lumber shall apply to said commis-

sioner in writing, to visit said boom and structures for the purpose of examining the manner and mode said logs, lumber, masts and spars are being rafted and secured, and see that the trips and passage-ways are properly guarded, and also to examine into and determine whether said boom is safe and secure, and being managed in the best possible manner for the lumbering interest, and the safety and security of the logs and lumber in their care and custody, said commissioners shall forthwith proceed to examine into and determine upon all matters relating to the boom as contemplated in this section  .  .  .  .  and if the said association shall fully and faithfully do and perform all the requirements and directions of said commissioners, then and in that case said association shall not be responsible for any loss or damage which may arise and accrue to any owners of lumber." Section 26. Two such applications were made in the summer of 1893, and the reports of the boom commissioners thereon are in the case. The defendant claims that it complied with the directions of the boom commissioners, and that it is thereby relieved from liability in this suit. There is no presumption that the defendant complied with these directions, and we think the evidence fails to show that it did in all respects. Further, the testimony tends to show that the defendant's liability arises largely, if not entirely, out of alleged acts of negligence prior to the examinations made by the boom commissioners, namely, the failure to employ seasonably a sufficient number of men to boom and raft the logs. And as to expressions of satisfaction found in their reports, in relation to the manner in which the work was being done, we can only say that we cannot substitute the opinion of the commissioners for the verdict of the jury. This defense cannot avail.

At the close of the charge of the presiding justice, the defendant requested the court to instruct the jury that the action could not be maintained, (1) "because the plaintiffs failed seasonably to present their claim for damages to the defendant, that it might be included in the assessment or a supplementary assessment of that year, 1893, covering the expenses of that year"; and (2) "because it was the duty of the plaintiffs to present their claim for damages

to the defendant within a reasonable time, and there is no evidence in the case that they ever presented their claim to the defendant, except by bringing this action, November 6, 1897." The presiding justice declined so to rule, and the defendant excepted.

We perceive no merit in the exceptions. The statute which made these plaintiffs members of the defendant association and subjected their logs to the defendant's booming and rafting, nowhere imposes upon the plaintiffs the duty of presenting their claim to the defendant, within any particular time, and certainly they were under no common law obligation to do so. Nor were the plaintiffs obliged to present their claim before bringing suit, and they may bring suit at any time within six years.

The remaining exception has been considered already in the discussion concerning the corporate character of the defendant association.

*Motion and exceptions overruled.*